# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES CROOKER**, | Case No. 3:20-cv-01961-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF PORTLAND**, a municipal corporation, **JAMI RESCH**, **JEFF BELL**, **ROBERT SIMON**, both as individuals and in their capacities as officers of the Portland Police Bureau, and **DOES 1-10**, | |
| Defendants. | |

**IMMERGUT, District Judge.**

This matter comes before the Court on Defendants' Motions to Make More Definite Plaintiff's First Amended Complaint and Motion to Dismiss multiple claims for relief in the Complaint. ECF 22. Plaintiff brought this civil rights and employment action against Defendants alleging (1) retaliation for whistleblowing; (2) violation of his right to free speech; (3) non-application of veteran's preference; (4) race discrimination; and (5) defamation per se. *See generally* ECF 21.

PAGE 1 – OPINION AND ORDER

For the following reasons, Defendants' Motion to Make More Definite the Complaint is granted, and Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff may file an amended complaint curing the deficiencies noted by September 27, 2021.

## BACKGROUND

The following facts are alleged in Plaintiff's First Amended Complaint, ECF 21, and are accepted as true for purposes of the present Motion.

Between 2017 and July 2020, Plaintiff was a lieutenant for the Portland Police Bureau ("PPB") and acting as a captain under contract. ECF 21 at ¶¶ 4, 16, 17. At the time, Defendant Jami Resch ("Resch") was a Chief for PPB, Defendant Jeff Bell ("Bell") was a Commander of Detectives, and Defendant Robert Simon ("Simon") was apparently employed by PPB as a Professional Standards Lieutenant. *Id.* at ¶¶ 7-9, 72.

At some point during the above time period, Plaintiff supervised Defendant Resch's fiancé, David Michaelson ("Michaelson") and recommended that Michaelson not be promoted based on work performance issues. *Id.* at ¶ 14. In response, the Chief's Office ordered Plaintiff to alter his "non-recommendation" four times to remove unfavorable information about Michaelson. *Id.* at ¶ 67. Plaintiff in turn reported Resch to Human Resources ("HR") for violating PPB's rule against nepotism. *Id.* at ¶¶ 13-14, 63. Apparently during this same time period, Assistant Chief Ryan Lee ("Lee") informed Plaintiff that the Chief's Office would "make him pay" for not recommending Michaelson. *Id.* at ¶¶ 15, 68. Plaintiff feared retaliation from the Chief's Office and reported this to HR. *Id.* at ¶ 15.

Although the Complaint offers virtually no information about dates, apparently during this same time period, Assistant Chief Lee recommended that Plaintiff be considered for a permanent captain position, but within days of Plaintiff's request not to promote Michaelson and his reporting Resch to HR, Deputy Chief Robert Day overrode Lee's recommendation that

Plaintiff have the opportunity to test and interview for open captain positions. *Id*. at ¶¶ 16, 18. Instead, Defendant City of Portland ("City") proceeded to reduce Plaintiff's pay, and Plaintiff hired an attorney to demand that the City comply with his employment contract. *Id.* at ¶ 20. Plaintiff also alleges that the City failed to comply with Plaintiff's union contractual terms for holiday pay, and Plaintiff engaged the PPB Union to advocate for his holiday pay. *Id.* at ¶ 21.

In December 2019, Plaintiff received a call from his wife that a man had attacked her and others near their home. ECF 21 at ¶ 23. Plaintiff was responsible for the precinct in which the attack occurred and dispatched patrol officers to the scene. *Id*. The officers arrested the suspect after he knocked one man to the ground, stabbed another man with the uncovered tip of an umbrella, and chased Plaintiff's wife. *Id.* at ¶ 24. Plaintiff believed that the detective "assigned to the case" failed to follow PPB directives and Oregon state laws in handling this situation, thereby depriving victims of statutory victims' assistance notices ("Victim Notification about Offenders" or "VINE"), so he reported the detective to PPB. *Id.* at ¶¶ 25-27, 97.

In connection with the attack, the District Attorney's Office invited victims to attend a meeting, and victims were told they could bring someone to support them. ECF 21 at ¶ 28. Plaintiff's wife asked Plaintiff to attend with her. *Id*.

On the day of the meeting, Plaintiff alleges he sought advice and permission from his supervisor, Commander Mike Krantz ("Krantz"), about whether he could attend the meeting in uniform. Krantz allegedly told Plaintiff to wear his uniform so that he could immediately return to work. *Id.* at ¶ 29. Plaintiff allegedly informed people at the meeting that he was there as a civilian to support his wife and not in an official capacity. *Id.* at ¶ 31.

During the meeting, Plaintiff believed that City of Portland Officer Amy Fraser ("Fraser") and Cascadia Clinician Cindy Hackett ("Hackett") acted in an agitated and aggressive

manner and gave false and misleading information when Plaintiff asked about providing victim notifications. *Id.* at ¶¶ 32, 96. Plaintiff left the meeting and returned to work to avoid any potential conflict. *Id.* at ¶ 32.

Resch later called Plaintiff at home and directed him not to participate in any other events related to the assault, even if they occur while on duty. ECF 21 at ¶¶ 33. Plaintiff removed himself from any command decisions related to the case and "assigned other command staff to handle it." *Id.* at ¶ 34. On December 11, 2019, Plaintiff reported to Commander Krantz what he believed were law and policy violations by Fraser and Hackett, which Plaintiff believed resulted in the denial of victims' protection rights. *Id.* at ¶¶ 35, 96-97.

### i. Investigations of Plaintiff's Conduct

Plaintiff appears to allege that Defendant Bell filed false complaints against Plaintiff with Internal Affairs ("IA") because Plaintiff repeatedly reported the misconduct of detectives under Bell's supervision. *Id.* at ¶¶ 44, 48, 71. One such complaint asserted that Plaintiff "used his official position to influence an investigation" and "wore his uniform to a hearing in which he was not an involved member." *Id.* at ¶ 44. Plaintiff alleges that the IA investigation of this complaint was improperly transferred to Internal Police Review ("IPR"), which he asserts does not have the authority to investigate people below the rank of captain, such as Plaintiff. *Id.* at ¶¶ 45, 100. Plaintiff also alleges that actions taken to suspend Plaintiff were public and violated PPB's union contract provision about not embarrassing commanding officers in the event of reprimand or discipline. *Id.* at ¶ 46.

Plaintiff further alleges in his First Amended Complaint that during his interviews with IA and IPR, he again reported what he believed were PPB detectives' violations of victims' rights in handling the assault case involving his wife. After the interviews, IPR and PPB added a

charge of untruthfulness against Plaintiff. *Id.* at ¶¶ 47, 50. Plaintiff states that the reports he made to IA and IPR during the interviews are protected activity under PPB HR Rules and Oregon and federal whistleblower protection laws, and that Defendants Simon and DOES 1-10 violated the law by allegedly leaking information to members of PPB that Plaintiff was going to be terminated for lying during the interviews. *Id.* at ¶¶ 47, 72.

Plaintiff further alleges that he hired a certified court reporter to transcribe his recorded interviews, and Plaintiff found more than 200 instances in which the transcript prepared by PPB of those same interviews misstated, altered, or excluded his statements, as to create a false impression of his truthfulness. *Id.* at ¶ 51. Even after Plaintiff made PPB and IPR aware of the transcription's alterations, they did not correct the transcript until Commander Hurley allegedly reviewed the transcripts and determined that Plaintiff had not been untruthful. *Id.* at ¶¶ 52-53. Plaintiff asserts that despite this finding, he remained on administrative leave. *Id.* at ¶¶ 54-55.

### ii.  The Captain Interviews and Promotion Process

Plaintiff also alleges that at some point after he reported what he perceived as rule violations at the victims' meeting to his chain of command, Chief Resch placed him on administrative leave. ECF 21 at ¶¶ 35-37, 96-101. Plaintiff appears to allege that this occurred two days before the captain examinations sometime in May 2020. *Id*. at ¶¶ 36-38, 70, 81-82, 99-101, 114; *see also id*. at 32 ("Police Captain Eligible List," attached to FAC as Exhibit B, dated May 7, 2020). Plaintiff also alleges that sometime after he was placed on administrative leave, PPB and the City reduced his pay to that of a lieutenant, even though he was under contract to receive an active captain salary. *Id*. at ¶¶ 36-38.

According to Plaintiff's First Amended Complaint, fifteen candidates applied to become captains through the captain promotion process. Three of the candidates, including Plaintiff,

were military veterans. *Id*. at ¶ 40. Plaintiff was the only member of the command structure at PPB applying for a promotion to captain. *Id*. at ¶ 120. Of the fifteen candidates, Plaintiff was the only one to have completed three years as an acting captain and to have served as an acting commander. *Id.* at ¶ 84. Plaintiff was also the only member of PPB's command structure who is Hispanic. *Id*. at ¶¶ 120-21.

After the initial interview process, all fifteen candidates were ranked as equally qualified. *Id.* at ¶¶ 42, 81-82. Plaintiff alleges PPB failed to award preference points to the veterans at each of the three stages of selection as required by Oregon law, and that Resch and her command team selected captain promotions based on their personal preferences. *Id.* at ¶¶ 40-42, 57-61. Of the first seven candidates promoted, none were veterans. *Id.* at ¶¶ 43.

As of the filing of the First Amended Complaint on February 12, 2021, Plaintiff had remained on administrative leave for roughly nine months. *Id*. at ¶¶ 46, 70. While Plaintiff remained on administrative leave, Krantz, now Assistant Chief, recommended Plaintiff for promotion to Commander of Central Precinct. *Id*. at ¶ 55. The promotion was overruled. *Id.* at ¶¶ 54-55.

### iii. Litigation Proceedings

Plaintiff filed his complaint on November 11, 2020. ECF 1. On February 12, 2021, Plaintiff filed his First Amended Complaint, which is at issue in this Opinion and Order. ECF 21. Defendants filed the present Motions on February 26, 2021. ECF 22.

### LEGAL STANDARDS

A motion brought under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New*

*Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

## DISCUSSION

### A.  Motion to Make the First Amended Complaint More Definite

As an initial matter, Defendants point out several mistakes in the Complaint and request the Court order Plaintiff to fix them. *See* ECF 22 at 3-4. In response, Plaintiff agrees to remove

PAGE 7 – OPINION AND ORDER

references to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"),
and to cite the United States Constitution instead of the Oregon Constitution in his second claim
for relief, regarding free speech. ECF 30 at 5; *see* ECF 21 at ¶ 90. However, Plaintiff does not
address the other two mistakes, in which he listed inapplicable statutes under his whistleblowing
and retaliation claim and under his veteran's preference claim. *See* ECF 22 at 4.

The Court orders Plaintiff to amend the Complaint. Plaintiff should remove all references
to USERRA and properly cite the United States Constitution for his free speech claim, as the
parties agree. Plaintiff should also remove reference to ORS § 659A.030 in his whistleblowing
and retaliation claim and remove the reference to ORS 659A.199 under his veteran's preference
claim. *See id*. at 4. Plaintiff may amend as necessary to appropriately "break out each cause of
action by itself." *Id*. at 4.

**B.  Motion to Dismiss Plaintiff's Fourth Claim for Relief (Race Discrimination)**

Defendants move to dismiss Plaintiff's race discrimination claim as to all Defendants
because Plaintiff failed to provide timely notice under the Oregon Tort Claims Act ("OTCA"),
*id*. at 5, 7-9, and as to the individual defendants because such a tort may only be brought against
the government body under the OTCA, *id*. at 9-10. Plaintiff "has the burden of proving that
notice of claim was given as required" under the OTCA. ORS § 30.275(7). In his response,
Plaintiff agrees that this claim may not be brought against individuals. ECF 30 at 8 ("Plaintiff
does not disagree" that "claims against individual defendants for race discrimination should be
dismissed"). The Court accordingly dismisses the race discrimination claims against individual

defendants on that basis.[1] The Court now turns to Defendants' request that this Court dismiss the

race discrimination claim as to the City as well, based on a failure to give timely notice.

Defendants argue that because Plaintiff "did not make a race claim in any of his formal

tort claim notices, that claim is only preserved to the extent that something happened in the 180

days before the City was served or given notice." ECF 22 at 9. Defendants assert that notice of

the race discrimination claim was not timely because nothing happened with respect to race

discrimination on or after May 16, 2020, which would be within 180 days before Plaintiff served

his Complaint on the City on November 12, 2020.[2]

In his response, Plaintiff argues that his race discrimination claim is not time-barred

because HB 4212, signed by the Governor on June 30, 2020 in response to the COVID-19

pandemic, extends the time for giving notice of a claim under ORS § 30.275 to "a date 90 days

after the declaration [of a state of emergency] and any extension [of the state of emergency]."

---

[1] Defendants also appear to assert that this Court should dismiss all state law claims against the individual defendants under the OTCA, except defamation, because individual employees may not be sued for torts committed within the scope of their employment. ECF 22 at 5. The only state law claims brought against individual defendants are (2) free speech violation under the Oregon Constitution, Art. I, § 8; (4) race discrimination under ORS 659A.030; and (5) defamation per se. *See* ECF 21 at 15-29. (The (1) whistleblowing and retaliation claim and (3) veteran's preference claim are only brought against the City. *See id.* at ¶¶ 62, 107.) Defendants do not challenge the defamation claim against individuals based on the OTCA, ECF 22 at 5, and it appears the parties agree that the free speech claim is actually a federal claim, not a state constitutional claim. *See* ECF 22 at 4; ECF 30 at 2, 5, 12-13; ECF 33 at 3. Accordingly, Defendants' request to dismiss "all state law claims" against individual Defendants except defamation under the OTCA concerns only the race discrimination claim. As explained in text, Plaintiff and Defendants agree that this claim against individual Defendants should be dismissed.

[2] While Defendants note the general rule that a plaintiff must plead timely tort claim notice, *see* ECF 22 at 7, they concede that the filing of the complaint itself here satisfies the statutory requirement if it is timely. *See id.* at 9 (noting the "race claim is only preserved to the extent something happened in the 180 days before City was served or given notice" via the original Complaint; "his 'actual notice' came more than 180 days after" in form of original Complaint); ECF 33 at 4-5 (arguing that Plaintiff must identify dates and alleged adverse employment action, but not that he must plead OTCA compliance).

ECF 30 at 7. HB 4212 grants this extension "[i]f the expiration of the time to commence an action or give notice of a claim falls within the time in which any declaration of a state of emergency issued by the Governor related to COVID-19, and any extension of that declaration, is in effect[.]" H.B. 4212 § 7(1), 80th Or. Legis. Assemb., Spec. Sess. (Or. 2020). On March 8, 2020, Governor Brown declared a state of emergency related to COVID-19, and HB 4212 was signed into law on June 30, 2020. ECF 30 at 7; *Bond v. Shriners Hosp. for Child.*, No. 3:20-cv-01943-SB, 2021 WL 1343058, at *6 (D. Or. Mar. 1, 2021), *report and recommendation adopted sub nom. Bond v. Shriners Hosps. for Child.*, No. 3:20-cv-01943-SB, 2021 WL 1341854 (D. Or. Apr. 9, 2021). HB 4212 remains in effect through at least December 31, 2021. ECF 30 at 7; *see also Bond*, 2021 WL 1343058, at *6 (noting as of the time of its decision, the "current state of emergency has been extended through May 2, 2021" (internal quotation marks and citation omitted)).

In reply, Defendants argue that HB 4212 does not preserve Plaintiff's claim because HB 4212 does not provide authorization to revive actions that have already lapsed. ECF 33 at 4-5. Defendants rely on *Bond* for this proposition. However, the analysis and holding in *Bond* concerned HB 4212's qualified authorization of the Chief Justice of the Oregon Supreme Court to "revive a time period that had already passed as of June 30, 2020," the Act's effective date. *Bond*, 2021 WL 1343058, at *6-8 (quotation marks and citation omitted). Here, the statute of limitations applicable for Plaintiff's race discrimination claim against the City, unlike that in *Bond*, did not lapse before June 30, 2020. Plaintiff alleges that he was placed on administrative leave "in May of 2020," shortly before the captain examination process began. ECF 21 at ¶ 114; *see also id.* at ¶¶ 114, 120-23 (alleging racial discrimination in promotion process). Accordingly, the statute of limitations for claims based on Defendant's failure to promote Plaintiff would not

have lapsed before June 30, 2020 because Plaintiff would have 180 days from May of 2020 to file his complaint. Plaintiff filed his first complaint on November 11, 2020, during the emergency period, ECF 1, and the City Attorney's Office received it on November 12, 2020, ECF 23-4 at 1-2. If a claim governed by ORS § 30.275 has not expired before June 30, 2020, and if its expiration date occurs during the (extended) state of emergency, it receives the extension granted by HB 4212. Because this lawsuit provided notice of the race discrimination claim within the emergency period as provided by HB 4212, the claim is timely.

Defendants also argue in their reply brief that HB 4212 does not save Plaintiff's race discrimination claim because "Plaintiff has not plead enough facts in his Complaint to demonstrate the application of the exception" and that he must "identify the date of the alleged adverse employment action" to do so. ECF 33 at 4. Defendants do not cite a case that holds that a plaintiff must specify the specific date of an adverse employment action to adequately provide notice (or plead a claim) *when timeliness is not in doubt*. *See* ECF 33 at 4-5. Nor do they develop and support their argument regarding what must be pled to state this claim generally. *See id*. The citation to *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), concerns timeliness and the inability to sue based on acts that occurred before the appropriate time period; it does not appear to hold that for acts clearly within the limitations period, the plaintiff must specify the date. *See Morgan*, 536 U.S. at 114. While the First Amended Complaint is both extremely disorganized and woefully devoid of dates on which allegedly offending conduct occurred, Plaintiff plausibly alleges that the hiring process at issue began in May 2020 or later. ECF 21 at ¶¶ 38-39, 114, 120-23; *see also* ECF 21 at 32 ("Police Captain Eligible List" dated May 7, 2020). Indeed, Defendants appear to concede that the lawsuit itself provided "actual

notice" of Plaintiff's race discrimination claim. ECF 22 at 9. Based on the arguments presented, Plaintiff has satisfied his burden of demonstrating that HB 4212 applies to his claim.

Accordingly, because Plaintiff's race discrimination claim is not time-barred, Defendants' motion to dismiss this claim against the City on that basis, ECF 22 at 7-9; ECF 33 at 4-6, is denied.

## C. Motion to Dismiss Plaintiff's Defamation Claims

Defendants bring a motion to dismiss Plaintiff's defamation claims against individual Defendants Resch, Bell, and Simon because the allegedly defamatory statements are absolutely privileged, or in the alternative, because Plaintiff provides insufficient facts to state a claim of defamation per se. *See* ECF 22 at 10-14. Defendants argue that the allegedly defamatory statements were made "in the course of an internal disciplinary investigation" or "court-adjacent proceeding" and thus are absolutely privileged under Oregon law. *Id*. at 11-12 (citing *Johnson v. Brown*, 91 P.3d 741 (Or. Ct. App. 2004)). Defendants also argue that the defamation per se claim lacks factual support because Plaintiff summarily alleges that multiple individual defendants "spread false information about Plaintiff." *Id*. at 13 (quoting ECF 21 at ¶¶ 126-27). Defendants also argue that Plaintiff does not identify a person to whom these false statements were made, thereby not alleging the defamation per se element of publication. *Id*. at 14.

In response, Plaintiff appears to concede that statements made during the personnel investigation are absolutely privileged. ECF 30 at 9. However, Plaintiff states that he "intends to establish that Defendants exceeded the scope of their employment" by, for example, making defamatory statements "while off duty, in uniform, and in a public space." *Id*. Plaintiff states that he is "unwilling to prematurely detail facts" due to Defendants' retaliatory conduct outside this

lawsuit, but he is "able to clarify facts for the Court" if that concern is alleviated.[3] *Id.*; *see also id.* at 9-11.

This Court concludes that Plaintiff's Complaint is too light on factual detail to state a claim for defamation per se. Plaintiff does not distinguish between any of the thirteen individual defendants in alleging they defamed him. *See* ECF 21 at ¶¶ 126-31. There is simply not enough factual detail to plausibly suggest liability of any defendant. And Plaintiff provides no authority for his suggestion that fears of external retaliatory conduct provide an exception to pleading standards. This Court dismisses the defamation claim with leave to amend.

## D. Motion to Dismiss Plaintiff's First Amendment Claims

Plaintiff alleges Defendants violated his "right to Freedom of Speech to appear in a hearing as emotional support for his wife while off-duty, and after making himself clearly known to be off-duty during the proceedings."[4] *Id.* at ¶ 102. Plaintiff states that his comments at this

---

[3] Plaintiff asks that this Court "disallow any further investigations by Defendants pertaining to events surrounding this action, and instead require Defendants to conduct their investigations within the Court's parameters set forth in the Rules of Discovery." *Id.* at 5; *see also id.* at 9. Plaintiff also states that he has learned of more relevant facts in the time since filing his amended complaint. *Id.* at 10. In response, Defendants state that "IA and IPR are required to conduct investigations into misconduct, no matter how the misconduct comes to their attention. . . . There is no litigation exception to this rule, even though Plaintiff suggests that there should be one." ECF 33 at 6. While this Court recognizes that Plaintiff is concerned, Defendants are correct on this point. In amending his complaint, Plaintiff should include all relevant factual allegations necessary to state his claims.

[4] Defendants also understand Plaintiff as alleging a First Amendment violation based on punishment for Plaintiff's "returning to work from the meeting and reporting what he perceived to be the professional misconduct of his coworkers . . . ." ECF 22 at 17; *see also id.* at 15 ("[w]histleblowing was [p]ursuant to [h]is [o]fficial [d]uties"); ECF 33 at 7. Plaintiff's response to Defendant's motion does not mention this basis and seems to concede the point, as it focuses only on the speech *made at the meeting. See* ECF 30 at 2, 12-13. The Court agrees with Defendants that speech made pursuant to Plaintiff's duties was not protected speech, but to the extent the First Amendment retaliation claim is based on statements made at the victims' meeting while allegedly acting as a private citizen, this may be a plausible claim. Taking all reasonable inferences in Plaintiff's favor, the FAC alleges a First Amendment violation premised on speech at the public meeting for victims. ECF 21 at ¶¶ 91-102.

meeting about "[w]hether victims' rights are protected in compliance with state law is a matter of public concern." *Id*. at ¶ 95.

Defendants argue that *Garcetti v. Ceballos*, 547 U.S. 410 (2006), controls the facts of this case. In their opening brief, Defendants discussed at length *Garcetti*'s holding that speech made pursuant to official duties is not protected by the First Amendment. *See* ECF 22 at 15-18. Indeed, that is the only authority Defendants discussed in any detail in either brief. *See id*., ECF 33 at 7-8. Plaintiff responded by explaining why his speech at the victims meeting was not made pursuant to his official duties. ECF 30 at 11-13. Given the facts alleged, Plaintiff has satisfied his burden on this point; Defendants' suggestion that wearing a uniform determines whether one's speech is made pursuant to one's duties is incorrect. *See id*.; *Hathaway v. California Dep't of Forestry & Fire Prot*., No. 1:18-cv-01155-LJO-SKO, 2019 WL 132277, at \*5, \*7 (E.D. Cal. Jan. 8, 2019) (finding that the speech at issue was private, not public speech, even though plaintiff wore his uniform); *cf. Barone v. City of Springfield*, 902 F.3d 1091, 1096-1101 (9th Cir. 2018) (finding police officer acted as public employee at second element after thorough analysis, where police officer spoke at a public event, the event was headlined "Come Meet Thelma Barone from the Springfield Police Department"; the "Department paid her to attend the event; she wore her uniform; [] her supervisor attended"; and she "understood that she attended and participated in the event as a representative of the Department"); *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1106 (9th Cir. 2011) (noting that having learned about the subject matter of one's speech through one's work is not determinative).

Neither party discussed the development of First Amendment retaliation doctrine in the Ninth Circuit post-*Garcetti*. Indeed, the Ninth Circuit has since laid out a comprehensive five-

element test for analyzing whether a public employee may bring a First Amendment retaliation claim:

> [Plaintiff] must show that (1) she spoke on a matter of public concern; (2) she spoke as a private citizen rather than a public employee; and (3) the relevant speech was a substantial or motivating factor in the adverse employment action. If [Plaintiff] establishes such a prima facie case, the burden shifts to the government to demonstrate that (4) it had an adequate justification for treating [Plaintiff] differently than other members of the general public; or (5) it would have taken the adverse employment action even absent the protected speech. [F]ailure to meet any [factor] is fatal to the plaintiff's case.

*Barone*, 902 F.3d at 1098 (internal citations and quotation marks omitted); *see also Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (providing these "*Eng* factors").

In *Barone*, the key issue was (2) whether the plaintiff spoke as a private citizen rather than a public employee. *Barone*, 902 F.3d at 1098. As explained above, at the pleading stage, Plaintiff satisfies his burden on that element. *See* ECF 30 at 12-13 (emphasizing that the "controlling factor" in *Garcetti* was whether the speaker's statements were made pursuant to his duties); *Barone*, 902 F.3d at 1098-1101 (discussing same in evaluating the second element of the claim); *Clairmont*, 632 F.3d at 1103, 1105-06 (equating step two with the "pursuant to duties" inquiry).

That said, despite asserting this First Amendment retaliation claim against the City, Resch, Bell, and DOES 1-10, *see* ECF 21 at ¶ 90, Plaintiff alleges no acts of retaliation against the City, Bell, and DOES 1-10 based on the statements made at the victims meeting, which is the only basis upon which Plaintiff can bring a First Amendment retaliation claim. His only allegations of retaliation in response to protected statements at the meeting concern Defendant Resch. *See id*. at ¶¶ 90-106. Accordingly, this Court dismisses the First Amendment retaliation claim as against Defendants City, Bell, and DOES 1-10 with leave to amend. The claim against Resch remains.

PAGE 15 – OPINION AND ORDER

**E.  Motion to Dismiss Plaintiff's Claims for Punitive Damages**

Defendants seek dismissal of Plaintiff's punitive damages claims. For the reasons that follow, this Court grants that request and dismisses all of Plaintiff's punitive damages claims with prejudice. Plaintiff only brings punitive damages claims for (1) whistleblowing and retaliation under state law, (2) free speech retaliation under federal law, and (4) race discrimination under state law.[5]

**1.  The OTCA**

Defendants argue that punitive damages cannot be obtained against a public body under the OTCA for any state law claims. ECF 22 at 14 (citing ORS § 30.269(1)). Plaintiff responds, very briefly and without support, that his (1) whistleblowing and retaliation and (4) race discrimination claims do not fall under the OTCA, so ORS § 30.269(1) does not apply. ECF 30 at 11.

In reply, Defendants note that "Plaintiff's argument is inconsistent with his own position earlier in his brief, in which he concedes that his claims for race discrimination against the individual Defendants must be dismissed under the [OTCA]." ECF 33 at 2; *see also* ECF 30 at 6. They argue that the OTCA is clear that the "sole cause of action for a tort committed by officers . . . of a public body acting within the scope of their employment . . . is an action under

---

[5] Defendants state that they do not request dismissal of Plaintiff's punitive damages claim based on his (5) defamation per se claim at this stage. ECF 22 at 14. However, Plaintiff does not appear to seek punitive damages in his defamation per se claim. *See* ECF 21 at ¶¶ 125-133; *id*. at 29 (claim five prayer for relief); ECF 30 at 11. Plaintiff requests punitive damages in his (2) free speech claim against all defendants under 42 U.S.C. § 1983 and the Oregon Constitution, Art. I, § 8, though Plaintiff states his intention to amend that claim as a federal Constitutional claim. *See* ECF 21 at ¶¶ 90-105; *id*. at 28-29; ECF 30 at 5, 12-13; ECF 22 at 4. Accordingly, Defendants' challenge to the free speech punitive damages claim is addressed in the § 1983 discussion. Plaintiff does not request punitive damages in his (3) veteran's preference claim. ECF 21 at ¶¶ 107-18; *id*. at 29 (claim three prayer for relief).

ORS 30.260 to 30.300." ECF 33 at 2 (emphasis omitted) (quoting ORS § 30.265(2)); *see also*

*Marguiles v. Tri-County Metro. Transp. Dist. of Oregon*, No. 3:13-cv-00475-PK, 2014 WL

4419263, at *3, *6 (Sept. 8, 2014) (explaining that for OTCA's purposes, a "tort" is defined as

"the breach of a legal duty that is imposed by law, other than a duty arising from contract or

quasi-contract," and finding that state law employment wage claims are torts covered by the

OTCA (quotation marks and citation omitted)); *see also* ORS § 30.260(8) (defining "tort").

Accordingly, Defendants argue that because "Plaintiff brings state law tort claims against a

public entity and its employees, the OTCA applies to Plaintiff's state law claims; as a result,

punitive damages are not available against the City as to those claims." ECF 33 at 3 (citing ORS

§ 30.269(1)); *see also* ORS § 30.269(1) ("Punitive damages may not be awarded on any claim

subject to ORS § 30.260").

Based on the arguments presented, this Court agrees with Defendants that Plaintiff's (1)

whistleblowing and retaliation and (4) race discrimination claims are subject to the OTCA and

accordingly do not support a claim for punitive damages. Accordingly, those punitive damages

claims, ECF 21 at ¶¶ 88, 124, and Prayer at 1.c and 4.c, are dismissed with prejudice.

### 2.  42 U.S.C. § 1983

Plaintiff brings one claim under federal law: his (2) First Amendment retaliation claim.

ECF 21 at ¶¶ 90-106. Defendants argue that the City is immune from punitive damages for

violations of 42 U.S.C. § 1983. ECF 22 at 14-15 (citing *City of Newport v. Fact Concerts*, 453

U.S. 247, 271 (1981)). In response, Plaintiff "concedes that punitive damages are likely not

recoverable against the City in a § 1983 action" and focuses his argument on the individual

defendants. ECF 30 at 11. Based on this concession and the clear holding of *City of Newport*, this

Court dismisses the § 1983 punitive damages claim against the City, ECF 21 at ¶ 105 and Prayer

2.c, with prejudice. *See City of Newport*, 453 U.S. at 271 ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

Lastly, the parties dispute whether Plaintiff may seek punitive damages under § 1983 from individual Defendants. Both parties cite *Smith v. Wade*, in which the Supreme Court held "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." 461 U.S. 30, 56 (1983). Defendants argue that "Plaintiff's allegations of fact do not rise to a description of conduct 'motivated by evil motive or intent,' or involving 'reckless or callous indifference,'" ECF 22 at 15, while Plaintiff argues, very briefly, that "it is a matter for the jury to decide whether there are facts sufficient at trial to prove punitive damages," ECF 30 at 11.

As discussed above, Plaintiff pleads that Defendants Resch, Bell, and DOES 1-10 retaliated against Plaintiff for protected speech he made at the meeting of assault victims Plaintiff attended as a private citizen to support his wife. *See, e.g.,* ECF 21 at ¶¶ 90-106. Plaintiff only makes allegations in this First Amendment punitive damages claim regarding conduct by defendant Resch; there is no mention of Bell or DOES 1-10. *See id*. Elsewhere in the Complaint, Plaintiff's allegations do not provide a reason why these defendants acted as they did; the context of other allegations suggests the causal vector behind the alleged actions of Resch, Bell, and DOES 1-10 was not Plaintiff's speech at the meeting but because he reported various violations of others or refused to recommend Michaelson. This speech is not the protected speech he alleges for purposes of his First Amendment claim. *See, e.g., id*. at ¶¶ 62-77 (whistleblowing and retaliation allegations), 126-131 (defamation allegations). Indeed, Plaintiff alleges explicitly elsewhere in the Complaint that Bell filed false complaints about him "because Plaintiff

continually reported the misconduct and misbehavior of detectives that Bell supervised"—not because of Plaintiff's speech at the victims meeting. *Id*. at ¶ 71. Because no jury could conclude that defendants Bell or DOES 1-10 were motivated by evil motive or intent or were reckless or callously indifferent to Plaintiff's federally protected rights based on these allegations, this Court dismisses the punitive damages claim against them with prejudice.

With respect to Resch, Plaintiff also alleges in his First Amendment claim that Resch "had Plaintiff investigated by IPR," placed him on administrative leave two days before his promotion interview, and violated "Plaintiff's right to Freedom of Speech to appear in a hearing as emotional support for his wife . . . ." ECF 21 at ¶¶ 99-102. No jury could conclude that these administrative actions were motivated by evil motive or intent or were reckless or callously indifferent to Plaintiff's federally protected rights. And Plaintiff does not allege that they were.

Plaintiff has failed to allege facts sufficient to support a First Amendment punitive damages claim against individual Defendants Resch, Bell, and DOES 1-10, and those claims are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Make More Definite the Complaint is GRANTED. Plaintiff's race discrimination claim against the individual defendants is dismissed with prejudice. Defendants' motion to dismiss Plaintiff's race discrimination claim against the City as untimely is denied. Plaintiff's defamation claims against the individual defendants are dismissed with leave to amend. Defendants' motion to dismiss Plaintiff's First Amendment claim based on speech at the meeting with his wife is denied with respect to Defendant Resch. Plaintiff's First Amendment claims against Defendants City, Bell, and DOES 1-10 are dismissed with leave to amend. Plaintiff's punitive damages claims (in his state law whistleblowing and

retaliation and race discrimination claims and in his federal First Amendment retaliation claims) are dismissed with prejudice.

The Court grants leave for Plaintiff to amend the Complaint to address the issues noted herein. Plaintiff may file an amended complaint by September 27, 2021. *See* Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED**.

DATED this 26th day of August, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge
